THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DURANE GANT (Impleaded), Defendant-Appellant.

(No. 58303;

First District (1st Division)—February 19, 1974.

James J. Doherty, Public Defender, of Chicago (Shelvin Singer, Richard A. Kavitt, and Robert Gevirtz, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Alan Brothers, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant, Durane Gant, was indicted for robbery in violation of Ill. Rev. Stat. 1969, ch. 38, par. 18—1. At a bench trial he was found guilty and sentenced to the Illinois State Penitentiary for not less than three nor more than five years. He appeals from that judgment, seeking outright reversal of his conviction or, in the alternative, that we either vacate his sentence and remand for resentencing or modify his sentence so as to conform to the Illinois Unified Code of Corrections. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3).

The defendant contends, first, that the evidence was not sufficient to establish that anything belonging to the complainant was taken from her and that such taking was by the use of force or intimidation; second, that the in-court identification of the defendant by the two police officers was so tainted by discrepancies with their earlier testimony as to render it unworthy of belief; and, third, that the court erred in sentencing the defendant, in that it assumed and took into consideration that

the defendant's action was a contributing factor in the complainant's death, which was neither charged nor proved, and that the minimum sentence imposed exceeds that provided under the Illinois Unified Code of Corrections. We conclude that the third contention has merit but that the first two do not. We therefore modify the sentence and as, so modified, affirm the judgment.

On April 9, 1971, at approximately 11:00 P.M., two police officers on patrol in a marked squad car near the L station located at 21st Street and Pulaski Road noticed a woman struggling with two men. Using both of his hands, one of the men was dragging the woman by her hair while the other pulled her purse away from her and held it on his left arm. His right arm was around her neck. The officers got out of their car, which was less than 100 feet away, and ran toward the scene of the struggle. The two men saw the officers and attempted to run away. One of them was unsuccessful—Ronald Bates, a juvenile who was caught with the woman's purse. The other eluded capture after being chased for some distance by one of the officers.

Ronald Bates, Durane Gant's co-defendant, told police at the time of his arrest that Gant was the man who got away. At the trial, he testified that he and Gant had disembarked from the L on their way home from visiting someone when Gant "snatched the lady's purse." A short scuffle then ensued before the arrival of the police. Bates then attempted to dissociate himself from Gant's act, claiming that he did not intend to steal her purse and that he was "only looking out for her." Gant later turned himself in to the police when he learned that he was wanted by them.

The complaining witness died two days after the incident but Bates and Gant were not charged with any offense related to her death. At the Coroner's Inquest, the police officers testified that they were unable to describe in detail the face of the man who escaped. Yet at the trial of Bates and Gant, they positively testified that they saw his face and recognized Gant as the man who got away.

Defense counsel for Gant argued at the trial that the officer's identification of Gant was tainted as a result of their prior testimony at the Coroner's Inquest. He also argued that Bates' testimony was self-serving and incompetent since Bates was an alleged accomplice. He concluded his argument by claiming that the State had therefore failed to prove his client guilty beyond a reasonable doubt.

But the trial court thought differently and both were found guilty of robbery. At the hearing in aggravation and mitigation, the judge stated, determining the sentence Gant should receive:

"I take into consideration in arriving at my judgment I am going

to deny probation and sentence both these men to the penitentiary, also the fact that this woman did die and although apparently there was not sufficient evidence to charge them with the murder or involuntary manslaughter whatever the case may be, certainly this event was a contributing factor to her death, traumatic shock, and they have that to carry with them and I am taking that into consideration, Mr. Howard, in imposing sentence in this case."

Gant was then sentenced to a term of not less than three nor more than five years in the Illinois State Penitentiary.

Passing to the defendant's first contention—that the evidence was not sufficient to establish that anything belonging to the complainant was taken from her and that such taking was by the use of force or intimidation—the defendant's said argument is essentially bottomed on the premise that since the complainant died before the trial and did not testify, there was no testimony that she owned and was carrying a purse, that it was taken from her by the defendants and that such taking was by force. Nor was any purse belonging to her introduced at the trial.

■■ But this is a non-evident major premise fallacy in that there is no legal requirement that these facts be established only by the owner—complainant's own testimony or that her purse be produced at the trial. Here the facts were established not only by the two officers who saw the purse pulled from her possession by Bates but also by Bates' testimony that Gant was with him and took the purse from her. And where, as here, two persons work together as a team, it is immaterial which of the two actually pulled the purse from her (*People v. Szatkowski* (1934), 357 Ill. 580, 583, 192 N.E. 561). We therefore conclude and hold that the evidence sufficiently established that a purse, presumptively hers, was taken from the complainant's possession by one of the two men operating as a team and that such taking was accomplished by the use of force.

■■ Passing now to the second contention—that the in-court identification of the defendant Gant by the two police officers was so tainted by discrepancies with their earlier testimony that it is unworthy of belief—this ignores two important factors. The first is that, despite some minor inconsistencies, both officers testified at the trial that Gant was the second man in the robbery, and it is the trial court's job to decide the facts, which it did here and such findings are not lightly to be set aside on appeal. (*People v. Mitchell* (1968), 101 Ill.App.2d 380, 386, 243 N.E. 2d 358.) The second factor ignored by the defendant's said contention is that Bates testified that the defendant Gant was with him during the incident and was the one who pulled the purse from the complainant's arm. As our Supreme Court said in *People v. Norwood* (1973), 54 Ill.2d 253, 256, 296 N.E.2d 852:

" 'The testimony of an accomplice is competent evidence, and, although uncorroborated, may be sufficient to sustain a conviction if it is of such a character as to prove guilt beyond a reasonable doubt. It is always, however, subject to grave suspicion and should be acted on with great caution. (*People v. Harvey*, 321 Ill. 361; *People v. Johnson*, 317 id. 430.) A defendant against whom an accomplice in the crime testifies is therefore entitled to cross-examine such witness and interrogate him freely as to his motives, bias and interest, his relation to the crime and persons connected with it, and any matters which tend to impeach his fairness or impartiality.' *People v. Maggio* (1927), 324 Ill. 516, 529; see also, *People v. Baker* (1959), 16 Ill.2d 364; *People v. Derrico* (1951), 409 Ill. 453; *People v. Moshiek* (1926), 323 Ill. 11."

Thus, the accomplice's testimony should be evaluated in terms of its weight and credibility, which is a determination lying peculiarly within the province of the trier of fact, whose judgment will not be set aside on review unless it is plainly apparent that the defendant was not proven guilty beyond a reasonable doubt (*People v. Nettles* (1969), 107 Ill. 2d 143, 153-154, 246 N.E.2d 29). For reasons unknown to us, the defendant chose to forego cross-examination of Ronald Bates. While Bates' testimony differs in many respects from that of the officers', nevertheless, as far as we have been able to determine from searching the record, his testimony was clear and convincing on these two critical points: a purse was snatched from the woman and Durane Gant, the defendant, was involved.

■■ We therefore conclude and hold that the evidence fully established that the defendant Gant was one of the two who, as a team, robbed the complainant of her purse.

We therefore affirm the defendant's conviction.

■■■ This brings us to the defendant's third contention—that the court erred insofar as the sentence is concerned in that it assumed and took into consideration that the defendant's action was a contributing factor in the complainant's death two days later, which was neither charged nor proved; and that the sentence imposed exceeds that now provided under the Illinois Unified Code of Corrections. Ordinarily, we would presume that a trial judge would disregard incompetent evidence at a presentence hearing (*People v. Spicer* (1970), 47 Ill.2d 114, 264 N.E.2d 181), but where the record shows that the judge allowed his determination of what sentence to impose to be affected by incompetent evidence, then we must vacate the sentence (*People v. Grigsby* (1966), 75 Ill.App. 2d 184, 220 N.E.2d 498). The record in the present case reflects that the trial judge did allow his determination of the sentence to be affected

by the death of the complaining witness for which he believed the defendants to be in some way responsible. But there was absolutely no evidence adduced at trial which would support such a belief. The defendant was "clothed in a presumption of innocence" regarding the death of the complaining witness, and it was therefore prejudicial to him when the trial judge imposed a sentence based at least in part on his belief that the defendant was somehow responsible for her death (*Grigsby, supra,* at 193).

■■ The defendant may also avail himself of the present sentencing provisions of the Unified Code of Corrections because his appeal was pending on the effective date of this statute and because the sentence for robbery is less under it than under the prior law. *People v. Chupich* (1973), 53 Ill.2d 572, 581-584, 295 N.E.2d 1.

■■ We therefore reduce the minimum sentence from three years to twenty (20) months. This constitutes a fair and equitable reduction of the sentence and complies with the Unified Code of Corrections. In all other respects, the judgment is affirmed.

Sentence modified and, as so modified, judgment affirmed.

BURKE and GOLDBERG, JJ., concur.